*4
 
 OPINION OF THE COURT
 

 Smith, J.
 

 In this case we consider whether the procedures used by a county to foreclose on a property following a tax delinquency satisfied constitutional due process even though the owner never actually learned about the proceeding. We conclude that due process was satisfied.
 

 I.
 

 In 1983, appellant purchased the property at issue, a residential vacant lot of about 20 acres located in the Town of Newburgh, Orange County. Appellant reported her address as Blaisdell Road, Orangeburg, New York on a form she filed with the County Clerk, who forwarded a copy to the Town Assessor. It is undisputed that this is the address where the Town sent the tax bills for the property from 1983 to 1998, and that appellant paid each of them except for the year 1996. According to appellant, in 1991 she moved to Lester Drive, also in Orangeburg and, along with her payment for the 1992 taxes, she allegedly sent a letter notifying the Town of her change of address.
 

 On January 1, 1996, the County levied taxes of $605.44 on the property. As it had done in the past, the Town sent appellant a bill at the address listed in the tax roll. Appellant claims that she mailed the Town a check as payment for the 1996 taxes, and that the check was never cashed. That April, the Town notified the County that taxes for the property remained unpaid, and the County credited the Town for that amount. The County claims that in the same month, it sent appellant a reminder tax bill, which appellant does not admit or deny
 
 *5
 
 receiving. On November 1, the County filed in Supreme Court a list of delinquent taxes, which included the property at issue.
 

 Thereafter, the County levied taxes for 1997, the Town sent a bill to appellant’s address in the tax roll and appellant paid the taxes. The check and envelope contained appellant’s new address. She did not, however, ask the Town to update her address. In October 1997, the County filed a petition of foreclosure relating to the 1996 taxes, and that same month posted and published public notice of the foreclosure proceeding. The County also mailed a notice to appellant at the address in the tax roll. Before mailing the notice, the County checked a computerized database containing information of property owners based on the records of town assessors. The post office returned the notice, with the notation “not deliverable as addressed unable to forward.”
 

 In January 1998, the County again levied taxes, the Town sent appellant a bill at the address in the tax roll, and appellant paid it with a check that also listed her new address. The front of the tax bill provides “* * * PLEASE SEE BACK OF BILL REGARDING PREVIOUS TAXES DUE.” The back of the bill contains the following notation:
 

 “Taxes from one or more prior levies remained due and owing when this statement was prepared. Payment of the arrears should be made to: Commissioner of Finance, Orange County Gov’t. Center. Goshen, N.Y. 10924 (914) 291-2480. To determine the amount in arrears contact that office. CONTINUED FAILURE TO PAY ALL OF THE TAXES LEVIED AGAINST THE PROPERTY WILL RESULT IN YOUR LOSS OF THE PROPERTY.”
 

 Appellant paid the 1998 bill, but did not inquire about any past due amounts.
 

 In February 1998, after the statutory redemption period expired, the County brought a motion for a default judgment, which Supreme Court granted in March. Appellant did not receive notice of the expiration of the redemption period or the tax sale. In June, the County sold the property to respondent Kennedy at a public auction for $8,000, retaining the surplus.
 

 Kennedy later hired an attorney to quiet title. The attorney conducted a search on the Internet to locate appellant, which resulted in two listings for “Mossafa,” one of whom was appellant’s husband. Kennedy commenced this action against appellant seeking an order and judgment quieting title to the
 
 *6
 
 property. Supreme Court granted Kennedy’s motion for summary judgment, and dismissed appellant’s third-party complaint against the County, finding that appellant was given adequate notice as required by statute and constitutional due process. The Appellate Division affirmed in a divided opinion, the majority concluding that appellant bore the burden of ensuring that the County had her proper address, and that the County satisfied its obligation by relying on the address listed in the tax roll. The two dissenters argued that the County had actual notice of appellant’s address based on her payment of taxes for 1997 and 1998, and that in any event, the County was under an obligation to take further steps to ascertain appellant’s address. We now affirm.
 

 II.
 

 In order to determine whether notice was adequate, it is necessary to review the statutory scheme for maintaining tax records and pending notices. Towns and counties work hand in hand in maintaining tax records. Town assessors annually must “complete an inventory of all the real property located therein and the names of the owners thereof’ (RPTL 500 [1]). That document is known as the assessment roll. The county recording officer is required to provide town assessors with a monthly update for all transfers of properties located in the towns, including the mailing address of the new owner, and the tax billing address, if different (RPTL 574 [1]). The town assessor must deliver a final version of the assessment roll to the county legislative body and the office of the town clerk by July 1. The town clerk also keeps a copy of the final assessment roll for 10 years as a public record. The tax roll consists of the assessment roll and a warrant authorizing and directing the collecting officer of the town to collect , the tax due, along with interest or penalties (RPTL 904 [1]).
 

 The town takes the lead in collecting the taxes for itself and the county. The town collecting officer mails each property owner, at the address listed in the tax roll, a tax statement showing the amount of taxes due (RPTL 922 [1] [a]). If at the time of preparing the tax statement, the property is subject to delinquent tax, the statement must include a legend substantially similar to the following language:
 

 “Taxes from one or more prior levies remained due and owing when this statement of taxes was prepared. Payment of the arrears should be made
 
 *7
 
 to (insert name, address and telephone number of the enforcing officer * * *). To determine the amount in arrears, contact that office. Continued failure to pay all of the taxes levied against the property will result in your loss of the property” (RPTL 981 [1]).
 

 As of January of each year, the amount of taxes levied becomes a lien until paid (RPTL 902). Generally, taxes due must be received by the collecting officer on or before January 31 (RPTL 924 [2]). After taxes are due but before the expiration of the warrant, the county’s collecting officer must send notice to property owners who have not paid their taxes (RPTL 987 [1]). The notice must be mailed to the mailing address reported by the county recording officer or otherwise reported to the collecting officer. If no address was reported, the notice must be mailed to the address of the property listed in the tax roll (RPTL 987 [1]).
 

 Upon the expiration of the warrant, the collecting officer must deliver to the county treasurer an account of all unpaid taxes listed in the tax roll (RPTL 936). Under the Uniform Delinquent Tax Enforcement Act enacted in 1993, an unpaid tax is the same as a delinquent tax.
 
 [1]
 
 On August 1, but no sooner than one month after the receipt of the account of unpaid taxes, a list of delinquent taxes is executed and filed in the office of the attorney for the tax district and in the clerk’s office (RPTL 1122 [1], [4], [7]). The listing must include the name of the owner as it appears in the tax roll, and whether the property was transferred after the applicable tax status period.
 

 Property subject to a delinquent tax lien generally may be redeemed within two years after the lien date. Where the redemption period has not been extended, the enforcing officer must execute and file with the county clerk a petition of foreclosure pertaining to properties that have been tax delinquent for 21 months (RPTL 1123 [1]). After filing the petition, the enforcing officer must publish a notice of foreclosure for three nonconsecutive weeks in a two month period in two designated papers of general circulation (RPTL 1124 [1], [2]). The statute also requires owners be given notice of the proceedings. Specifi
 
 *8
 
 cally, at all times relevant to this case, the statute required that the enforcement officer must
 

 “cause a notice to be mailed, by ordinary first class mail, to (a) each owner and any other person whose right, title, or interest was a matter of public record as of the date the list of delinquent taxes was filed, which right, title or interest will be affected by the termination of the redemption period, and whose name and address are reasonably ascertainable from the public record, including the records in the offices of the surrogate of the county * * * In the event that the name or address of an owner does not appear in such records the enforcing officer shall so state in an affidavit which shall be filed in the office of the county clerk” (RPTL 1125 [l]).
 
 [2]
 

 The notice must contain a copy of the petition and a notice informing the tax debtor of the tax delinquency, and that failure to pay the taxes and any “other legal charges” due will result in the loss of the property (RPTL 1125 [2]). One definition of “legal charges” is “the reasonable and necessary cost of any search of the public record required or authorized to satisfy the notice requirements of this article” (RPTL 1102 [1] [e]; [2]).
 

 If the property is not redeemed and no answer is interposed, the court enters a judgment directing that title pass in fee simple absolute to the county (RPTL 1136). The county may then sell the property either with or without advertising for bids, although the county legislative body must approve the sale if the property is not sold in a public auction (RPTL 1166).
 

 The tax debtor has one month from the entry of the judgment to file a motion to reopen the judgment (RPTL 1131). The tax debtor has the burden of affirmatively establishing a jurisdictional defect or invalidity in the tax or the foreclosure proceedings, since the taxes and lien are presumed to be valid (RPTL 1134).
 

 III.
 

 In this case, the parties disagree whether compliance with the statutory notice procedures provided appellant with constitutionally adequate notice of the foreclosure action. Both the Federal and State Constitutions provide that the State may not deprive a person of property without due process of
 
 *9
 
 law (US Const 14th Amend; NY Const, art I, § 6). Where the names and addresses of interested parties are known, due process requires “notice reasonably calculated, under all the circumstances, to apprise” that party of the foreclosure action, so that the party may have an opportunity to appear and be heard
 
 (Mullane v Central Hanover Bank & Trust Co.,
 
 339 US 306, 314 [1950];
 
 see also Matter of McCann v Scaduto,
 
 71 NY2d 164 [1987]). The key word is “reasonably,” which balances the interests of the State against the rights of the parties.
 

 In
 
 Mullane,
 
 the Court held that notice of a settlement action by publication to beneficiaries of a trust fund whose names and addresses were “at hand” was not sufficient, and that notice by ordinary mail was required (339 US at 318). Particularly relevant to this case, the Court also held that notice by mail was required for beneficiaries whose contact information was not known, but could be ascertained through “due diligence”
 
 (id.
 
 at 317). In
 
 Mennonite Bd. of Missions v Adams
 
 (462 US 791, 800 [1983] ), the Court held that mortgagees, and not just owners, whose identities are “reasonably ascertainable” are entitled to notice by mail rather than just publication.
 

 At the time of the foreclosure, RPTL 1125 essentially encapsulated the two requirements of
 
 Mullane
 
 and
 
 Mennonite.
 
 First, it required notice by ordinary mail. Second, it required, and still does, that the notice be sent to owners whose property interest was a matter of public record at the time the list of delinquent taxes was filed, and “whose name and address are reasonably ascertainable from the public record, including the records in the offices of the surrogate of the county.” (RPTL 1125 [1] [a].)
 

 As an initial matter, we reject the view that the enforcing officer’s obligation is always satisfied by sending the notice to the address listed in the tax roll, even where the notice is returned as undeliverable. In such cases, the enforcing officer is in no different position than if an initial examination of the roll had yielded no address. Generally, when the notice is returned as undeliverable, the tax district should conduct a reasonable search of the public record. It is entirely possible that the public record may contain an alternative address of the owner or interested party
 
 (see Prisco v County of Greene,
 
 289 AD2d 681 [2001] [notice found inadequate where County did not send notice to plaintiffs address contained in its files, when notice sent to plaintiffs father was returned as unclaimed];
 
 see also Tobia v Town of Rockland,
 
 106 AD2d 827 [1984] [issue of fact precluding summary judgment where
 
 *10
 
 County only sent notice of expiration of redemption period to the address in assessment roll, even though plaintiffs had notified Town of change of address and Town sent tax bill to that address]).
 

 The public record does not consist solely of the tax roll. To the contrary, RPTL 1125 specifically refers to the records of the surrogate’s office. In fact, the statute contemplates that the enforcing officer may generally charge up to $150 for any reasonable search of the public record (RPTL 1102 [1] [e]). A reasonable search of the public record, however, does not necessarily require searching the Internet, voting records, motor vehicle records, the telephone book or other similar resource.
 

 Under the circumstances of this case, we conclude that no further search was required. Appellant does not provide any evidence that a search of the public record would have revealed her current address
 
 (see Congregation Yetev Lev D’Satmar v County of Sullivan,
 
 59 NY2d 418, 425 [1983]). Appellant argues that a search would have uncovered the checks for 1997 and 1998 and envelopes mailed to the Town, which listed her current address. While towns are required to keep a record that payment was made, they are not required to retain copies of checks or the envelopes they came in. In addition, an address on a check or envelope, alone, is not sufficient to put the Town or County on notice that that is the address where notices should be sent. Appellant also argues that while the deed did not contain her address, her attorney’s name was listed on the deed. It is not possible to discern from the face of the document that the attorney represented her and not the title company, or another entity.
 

 Finally, appellant claims that soon after moving, she sent the Town a letter notifying it of her change of address, but she did not provide either a copy of the letter or proof that it was sent. In light of the fact that for several years after appellant claims to have sent the letter, the Town kept billing her at the address in the tax roll, and she received and paid the bills, but does not claim she took any steps to determine why the change of address had not taken effect, her bare allegation is insufficient to defeat a motion for summary judgment
 
 (see Glick & Dolleck v Tri-Pac Export Corp. ,
 
 22 NY2d 439, 441 [1968]).
 

 While to an owner who has not abandoned his or her property, learning of its foreclosure is distressing — particularly when the tax due constituted a minuscule percentage of the market value of the property — the owner’s interests must be
 
 *11
 
 balanced against the State’s interest in collecting delinquent taxes, taking into account the status and conduct of the owner in determining whether notice was reasonable
 
 (see Matter of ISCA Enters, v City of New York,
 
 77 NY2d 688, 700 [1991]). Ownership carries responsibilities. Although appellant missed only one payment, she failed to protect her ownership interest by updating her address. Her pattern of paying bills sent to an address that she claims was incorrect gave the Town and County reason to believe that it was still the correct address.
 

 While the conduct of a party does not excuse the enforcing officer from providing notice to those whose contact information is reasonably ascertainable, it is nevertheless relevant in determining whether the party’s contact information was reasonably ascertainable. Also relevant is that, as required by KPTL 1125 (2) (a), at least for 1998, a tax bill put appellant on notice that taxes were due, and that the failure to pay them would result in the loss of the property
 
 (compare with Mennonite,
 
 462 US at 800 [knowledge of tax delinquency only is not equivalent to notice of foreclosure]). Thus, under the circumstances of this case, appellant’s current address was not reasonably ascertainable, and the attempted personal notice, coupled with posting and publication, satisfied due process.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Ciparick, Wesley, Rosenblatt, Graffeo and Read concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Foreclosure is one of the many remedies available to a tax district. For example, a collecting officer may levy on any personal property of the tax debtor and sell it in a public auction. Unless claimed by another person, any surplus, after deducting taxes due and expenses of levy and sale, must be returned to the tax debtor (RPTL 926 [4]). Another remedy is the institution of proceedings supplementary to execution (RPTL 990 [1]).
 

 [2]
 

 . The section has since been amended to require that notice be given by certified mail (L 2000, ch 358, § 1).